[Cite as *State v. Ruberg*, 2013-Ohio-4144.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-120619 |
| | | C-120620 |
| Plaintiff-Appellant, | : | TRIAL NO. 11TRC-36309 |
| vs. | : | |
| | | *O P I N I O N.* |
| ASHLEY RUBERG, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 25, 2013

*John Curp*, City Solicitor, *Charlie Rubenstein,* City Prosecutor, and *Jacqueline Pham,* Assistant City Prosecutor, for Plaintiff-Appellant,

*The Law Office of Steven R. Adams, Steven R. Adams* and *Marguerite Slagle,* for Defendant-Appellee.

Please note:  this case has been removed from the accelerated calendar.

**HILDEBRANDT, Presiding Judge.**

{¶1}     Plaintiff-appellant state of Ohio appeals the judgment of the Hamilton County Municipal Court granting a motion to suppress in a prosecution for operating a vehicle with a prohibited breath-alcohol concentration and driving while impaired.

### The Stop and the Field-Sobriety Tests

{¶2}     Early one morning, at approximately 1:30 a.m., Ohio State Trooper Joel Westhoven clocked defendant-appellee Ashley Ruberg driving 72 m.p.h. in a 45 m.p.h. zone.   Westhoven stopped Ruberg's car and informed her that she was speeding.   Ruberg produced her license without difficulty.   Although her speech was clear and coherent, Westhoven testified that her eyes were "a little red" and that there was a smell of alcohol coming from the car and her person.   Accordingly, he decided to administer field-sobriety tests.

{¶3}     Ruberg exited from her car without hesitating or stumbling.   She was cooperative and told Westhoven that she had consumed a drink at around 4:00 p.m.

{¶4}     Westhoven first administered the horizontal-gaze-nystagmus (HGN) test.   He testified that Ruberg had exhibited six "clues" of impairment, but he conceded that he had improperly administered the test because he had failed to turn Ruberg completely away from traffic and from his cruiser's overhead lights.

{¶5}     Next, Westhoven administered the walk-and-turn test.   He testified that Ruberg had exhibited one clue of impairment because she had not placed the heel of her foot directly on the toe of the other foot.   On cross-examination, though, Westhoven admitted that guidelines for the test allow for one-half inch between steps.   Westhoven could not recall the amount of space between Ruberg's steps that

had led him to conclude that she had not performed the test successfully. But he did note that Ruberg had exhibited a second clue when she had stepped off of the line twice during the test.

{¶6}     Finally, Westhoven administered the one-leg-stand test. He stated that Ruberg had performed that test successfully.

{¶7}     Westhoven placed Ruberg under arrest. A breathalyzer test revealed that Ruberg had a concentration of .116 grams of alcohol per 210 liters of her breath.

### The Motion to Suppress

{¶8}     Ruberg filed a motion to suppress, contending, among other things, that Westhoven had not possessed probable cause to arrest her. The trial court granted that motion, and the state appealed.

{¶9}     In a single assignment of error, the state argues that the trial court erred in granting Ruberg's motion to suppress.

{¶10}     When considering a motion to suppress, the trial court acts as the trier of fact and is in the best position to evaluate the credibility of witnesses and to weigh the evidence. *State v. Sanders*, 1st Dist. Hamilton No. C-030846, 2004-Ohio-6842, ¶ 6, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Although we must accept the trial court's findings of fact if they are supported by some competent, credible evidence, we conduct a de novo review of whether the facts meet the applicable legal standard. *Id.*

{¶11}     The standard for determining whether an officer had probable cause to arrest a suspect for operating a vehicle under the influence of alcohol is whether "at the moment of the arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." *Cincinnati v. Bryant,* 1st

Dist. Hamilton No. C-090546, 2010-Ohio-4474, ¶ 15, quoting *State v. Homan,* 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000). This is an objective, not a subjective, standard. *Bryant* at ¶ 15, citing *State v. Deters,* 128 Ohio App.3d 329, 333, 714 N.E.2d 972 (1st Dist.1998).

{¶12} This court addressed the granting of a motion to suppress under similar circumstances in *State v. Phoenix,* 192 Ohio App.3d 127, 2010-Ohio-6009, 948 N.E.2d 468 (1st Dist.). In *Phoenix,* we held that the following facts did not give rise to probable cause to arrest: (1) the defendant was driving without his headlights illuminated; (2) he had a slight odor of alcohol on his breath; (3) his speech was not slurred; (4) his eyes were glassy and bloodshot; (5) he did not have difficulty producing his license, exiting from his vehicle, or standing while outside the vehicle; (6) he admitted having consumed alcohol prior to driving; and (7) he demonstrated only one clue of impairment in each of the two properly administered field-sobriety tests. *Id.* at ¶ 8.

{¶13} The facts of the case at bar are analogous to those in *Phoenix.* In this case, there was no evidence of erratic driving, although Ruberg was driving well over the speed limit. Her speech was clear and coherent, and she exhibited no difficulty in obeying Westhoven's commands to produce her license and exit from her car. Westhoven testified that there was an odor of alcohol emanating from Ruberg's person, but he did not characterize the odor as strong. And even though Ruberg had admitted to consuming alcohol, she exhibited at most only two clues of impairment on the field-sobriety tests that had been properly administered.

{¶14} Under these circumstances, the trial court did not err in granting the motion to suppress, and we overrule the assignment of error.

## Conclusion

{¶15}   We affirm the judgment of the trial court.

Judgment affirmed.

DEWINE, J., concurs.
DINKELACKER, J., dissents.

DINKELACKER, J., dissenting.

{¶16}   I agree that this case is similar to the situation that this court faced in *State v. Phoenix*, 192 Ohio App.3d 127, 2010-Ohio-4474, 948 N.E.2d 468 (1st Dist). And, as I did in *Phoenix*, I must dissent.

{¶17}   Trooper Westhoven, a five-year veteran of the Ohio State Highway Patrol with nearly 100 OVI arrests to his credit, stopped Ruberg's car after he determined that she was traveling nearly 30 m.p.h. over the speed limit.  Ruberg admitted to drinking alcohol that day and, in spite of the fact that she claimed that the consumption had occurred hours before, she still smelled of alcohol and her eyes were red.  Westhoven, who had been trained to detect alcohol consumption and determine impairment, oversaw Ruberg's performance of three field-sobriety tests. While she did not fail the tests, there were "indicators" that Westhoven observed that led him to conclude that Ruberg's ability to operate her motor vehicle was impaired.

{¶18}   The measurement of probable cause is taken from the vantage point of a prudent, reasonable, and cautious police officer, on the scene at the time of the arrest, guided by his experience and training.  *United States v. Davis* 458 F.2d 819, 821 (C.A.D.C.1972).  Under the facts in this case, Trooper Westhoven's observations, as understood through the lens of his training and experience, led him to the reasonable conclusion that Ruberg's ability to operate a motor vehicle had been impaired by her consumption of alcohol.  The trial court was incorrect when it held otherwise.

5

**{¶19}** I am concerned about the message that decisions like this send to law enforcement. In essence, we are telling Trooper Westhoven that, in spite of the fact that Ruberg had been driving at an excessive rate of speed, had admitted to him that she had consumed alcohol, was exhibiting the physiological effects of having consumed alcohol, still smelled of alcohol, and was giving some indications that her motor skills were adversely affected by her alcohol consumption, he should have simply written her a ticket and let her drive off into the night. I find such an outcome problematic.

Please note:

The court has recorded its own entry on the date of the release of this opinion.